UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOR-DALL ENTERPRISES, INC.,

    Plaintiff,

v.

File No. 1:13-cv-915

HON. ROBERT HOLMES BELL

DARK HORSE DISTILLERY, LLC,

    Defendant.
_____/

## **OPINION**

    This is an action for trademark infringement and unfair competition brought under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903, and Michigan common law. Defendant has filed a motion to dismiss, (Dkt. No. 9), under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Plaintiff has filed a response (Dkt. No. 13) to which Defendant has filed a reply (Dkt. No. 14). Given the completeness of the record and arguments presented, the Court holds oral argument is unnecessary for the disposition of the motion. *See* W.D. Mich. LCivR 7.2(d); *see also Himes v. United States*, 645 F.3d 771, 784 (6th Cir. 2011).

    Two questions are before the Court. First, whether Defendant has a sufficiently interactive website such that exercise of personal jurisdiction comports with Due Process under the *Zippo* sliding-scale. Second, whether the effects of Defendant's allegedly tortious conduct were directed toward and felt in Michigan. Because the Court answers these questions in the affirmative, Defendant's motion will be denied.

I.

Plaintiff is a brewer of craft beers headquartered in Marshall, Michigan. (Compl., Dkt. No. 1 ¶ 1.) Defendant produces "hand-crafted, small-batch spirits" and is located in Kansas. (Def.'s Br., Dkt. No. 10 at 5.) Plaintiff does business as "Dark Horse Brewing Co." (Compl., Dkt. No. 1 at 1.) Plaintiff began using the marks DARK HORSE and DARK HORSE BREWING COMPANY in interstate commerce in connection with its beer in or about 1997. (Pl.'s Resp., Dkt. No. 13 at 7.)

Defendant chose the names DARK HORSE and DARK HORSE DISTILLERY in 2010. (Def.'s Br., Dkt. No. 10 at 6.) Defendant filed "Intent to Use" applications with the United States Patent and Trademark Office (USPTO) for the marks DARK HORSE and DARK HORSE DISTILLERY in 2010. (Compl., Dkt. No. 1 ¶ 13.) Around this same time, Defendant learned of Plaintiff's brewery and name through an Internet search conducted by its counsel. (Pl.'s Resp., Dkt. No. 13 at 9.) Plaintiff became aware of Defendant's allegedly infringing marks in 2011 when it filed its own applications with the USPTO. (*Id.*) Plaintiff filed a Notice of Opposition in May 2013, which it is presently prosecuting (*Id.*)

According to Plaintiff, after the Opposition Proceeding, "Defendant did not curb its infringing activities." (*Id.* at 9.) Plaintiff initiated the present suit in August 2013. (*Id.*) "[T]he limitations of the [Trademark Office's] jurisdiction" left Plaintiff with no choice but to litigate "when confronted with the reality of Defendant's continuing and expanding infringement."

II.

When sitting in federal question jurisdiction, a court may exercise personal jurisdiction over a defendant "'if the defendant is amenable to service of process under the [forum] state's long-arm statuate and if the exercise of personal jurisdiction would not deny the defendant[] due process.'"

2

*Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coalition of Radioactive Materials Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Although Michigan's long-arm statute is "coextensive" with due process, the jurisdictional analysis requires inquiry into both factors because the statute "enumerates specific instances where jurisdiction may be exercised." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 n. 1 (6th Cir. 2012) (citing *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997)).

In the context of a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). When such a motion is decided without an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal citation omitted). The evidence before the court must be viewed "in a light most favorable to the nonmoving party." *Id.*

Plaintiff argues that personal jurisdiction is proper because "Defendant operates an interactive website that solicits Michigan residents to order and purchase goods and services." (Pl.'s Resp., Dkt. No. 13 at 13.) Plaintiff also argues that "Defendant has purposefully directed an injury toward Michigan by infringing [Plaintiff's] trademarks with knowledge that [Plaintiff] resides in [Michigan]." (*Id.*) Defendant argues that its website is passive (Def.'s Br., Dkt. No. 10 at 13), and that any tortious conduct it committed was not deliberate and not aimed at Michigan. (*Id.* at 17–18.)

**A.     Due Process**

Due process concerns are governed by the standard articulated in *International Shoe* and expounded by its progeny: ensuring a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and

3

substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In addition to the "minimum contacts" analysis required by *International Shoe*, the question of due process in the context of establishing specific personal jurisdiction turns on whether "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). The Sixth Circuit has formulated a three-prong test to evaluate whether exercising specific personal jurisdiction satisfies due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

1. <u>Purposeful availment</u>

Plaintiff presents two theories of purposeful availment. First, Plaintiff argues that Defendant runs an interactive website directed at Michigan residents. (Pl.'s Resp., Dkt. No. 13 at 20.) Second, Plaintiff argues that the injury of Defendant's alleged trademark infringement is felt in Michigan. (*Id.*)

    (a)    Interactive Internet Website

"A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp.

4

1119, 1124 (W.D. Pa. 1997) (adopting to "*Zippo* sliding-scale" for evaluating claims of personal jurisdiction based on a defendant's website). The sliding scale ranges from "one end of the spectrum . . . where a defendant clearly does business over the Internet," *Zippo*, 952 F. Supp. at 1124, to "the opposite end . . . where a defendant has simply posted information on an Internet [website] which is accessible to users in foreign jurisdictions." *Id.* In the first instance, "personal jurisdiction is proper," while in the second, the contact with the forum state "is not grounds for the exercise of personal jurisdiction." *Id.* In the middle lie "interactive [websites] where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the [website]." *Id.*

Plaintiff argues that Defendant's website is interactive in the following ways. The website requires users to click a button to confirm their age. (Pl.'s Resp., Dkt. No. 13 at 15.) The website also provides information on where to buy Defendant's allegedly infringing products. (*Id.*) Plaintiff does not argue that this feature alone makes the website interactive. However, Plaintiff asserts that by clicking the text "online by clicking here" a user of the website is sent "directly to the 'checkout' page on Defendant's distributor's website, with DARK HORSE spirits—and no other goods—automatically presented for immediate purchase." (*Id.*)

> Thus, after clicking the link provided on Defendant's website, the consumer then simply needs to select which of Defendant's products to add to its "shopping cart" and provide its shipping and credit card information. With regard to shipment, it is noteworthy that a dropdown box presents the option of shipment to Michigan.

(*Id.* (internal record citations omitted).)

The website further invites visitors to contact a member of Defendant's staff about touring

the distillery (*Id.* at 16.) According to Defendant's website, there is also an "Event Space" available for rental. (*Id.*) The website includes a contact form asking a person interested in renting the facility to supply his or her "name, email address, type of event . . ., number of expected guests for the event, a description of the event, the preferred day of the week for the event, and a date range for the event." (*Id.*)

Defendant argues that its website "has the hallmarks of a passive website. Its primary function is to provide information to visitors." (Def.'s Br., Dkt. No. 10 at 13.) Specifically, Defendant asserts that the website "includes information regarding [Defendant] generally, information regarding [Defendant's] products, and information regarding the event space [Defendant] operates." (*Id.*) Defendant specifically avers that it does not sell any of its products through the website. (*Id.*)

Defendant does not dispute that its website contains a link directly to its products on a third-party website. (*Id.* at 14.) Rather, Defendant argues that its website is of the type discussed in *Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017 (N.D. Iowa 2013). Defendant cites the case for the proposition that "the presence of a hyperlink to a third-party distributor [on a defendant's website], and any sales made by that distributor into the forum state, [does] not give rise to personal jurisdiction over the defendant." (Def.'s Br., Dkt. No. 10 at 15.) Defendant correctly asserts that the facts in *Foreign Candy* are nearly indistinguishable from the present case. (*Id.* at 14); *see also Foreign Candy*, 950 F. Supp. 2d at 1021. However, upon careful review of the district court's reasoning and supporting authority, this Court does not find *Foreign Candy*'s conclusions of law persuasive.

*Foreign Candy* relies primarily on three cases from the Eighth Circuit, Third Circuit, and

Federal Circuit case to reach the conclusion for which Defendant cites it. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589 (8th Cir. 2011); *Arpaio v. Dupre*, 527 F. App'x 108 (3d Cir. 2013); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275 (Fed. Cir. 2005). These cases are distinguishable for a variety of reasons. In *Trintec*, the defendant challenging personal jurisdiction did not have a website with links to third-party vendors, but rather the issue was the relationship between the defendant and third-party vendors whose websites linked back to the defendant's. *Trintec*, 395 F.3d at 1275. Likewise in *Arpaio*, the issue was the weakness of the link between the defendant contesting personal jurisdiction and third-party distributors in the forum. *Arpaio*, 527 F. App'x at 114. Finally, the issue in *Viasystems* was whether personal jurisdiction could be established over a corporate parent whose only contact with the forum was the website of its subsidiary. *Viasystems*, 646 F.3d at 596. Because these cases are not binding upon this Court, and because the Court is not convinced of their factual similarity to the present case, it does not find *Foreign Candy*'s conclusions of law persuasive authority in this case.

Binding authority in this particular area is scarce in this circuit. The most on-point discussion comes in *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327, F.3d 472 (6th Cir. 2003), in which the Sixth Circuit evaluated claims of copyright infringement against multiple defendants accused of unauthorized "sampling" of the plaintiff's copyrighted recordings. *Id.* at 475 n.2.

One defendant, DM, was a "family-owned and operated independent record company located in Florida that produces and distributes sound recordings." *Id.* at 476. This defendant operated "a website, dmrecords.com, through which users can access DM's catalog and purchase DM's records. Through the DM site, users select a recording of choice and then are redirected to Amazon.com to complete their purchases." *Id.* at 484. DM had also entered into a "nationwide distribution" contract

with a music distribution company. *Id.* at 483. DM did not admit that it required its distributor to sell its music nationwide, but did admit that its understanding was that its product would be distributed in all fifty states. *Id.*

In its opinion, the Court of Appeals formally adopted Justice O'Connor's "stream of commerce 'plus'" formulation of purposeful availment under the Due Process Clause. *Id.* at 480 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Soland Cnty.*, 480 U.S. 102, 112 (1987)). In *Asahi*, the plurality stated:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112. Applying this rule to the facts before it, the court determined that DM had purposefully availed itself of the privilege of acting in the forum state, even though the sales of its products came through a third-party website. *Bridgeport*, 327 F.3d at 484. By placing its product into the national stream of commerce (through its distribution agreement), plus operating a website that provided a link to specific products that could be ordered through the Internet (namely, Amazon.com), DM met the minimum contacts necessary to purposefully avail itself of the privilege of acting in the forum state under the Due Process clause. *Id.*

Likewise, in this case, there is evidence before the Court that Defendant has purposefully availed itself of the privilege of acting in Michigan. In its reply brief Defendant states, "Calling

portions of [Defendant's] website 'interactive' does not make them so." (Def.'s Reply, Dkt. No. 14 at 9.) By the same token, neither does calling the entire website passive. Defendant does not dispute that its website is accessible to customers in Michigan, nor does it dispute that the website contains a link under the "Where to Buy" section of its website that allows customers to order and receive its product in all fifty states from www.drinkupny.com.

Defendant argues, rather, that it does not "own or control" the third-party website that distributes its product. (Def.'s Br., Dkt. No. 10 at 8.) Defendant also attacks the sufficiency of the evidence presented by Plaintiff—namely the testimony of Dr. William A. Ziehler. (Def.'s Reply, Dkt. No. 14 at 5.) Dr. Ziehler is a Michigan patent attorney who visited Defendant's website, ordered Defendant's product with the allegedly infringing mark, and had the product shipped to him in Michigan. (*See* Ziehler Aff., Dkt. No. 15-5 at 15–16.) Ziehler made the purchase after the complaint in this case was filed. (*Id.* ¶ 4.) Defendant argues that "[f]acts arising after the complaint is filed have no bearing on personal jurisdiction." (Def.'s Reply, Dkt. No. 14 at 5.) Defendant therefore argues that Ziehler's purchase "deserves no consideration." (*Id.* at 6.) Defendant's argument is only half correct.

Post-complaint behavior by a defendant, when the cause of action is for a continuous tort such as trademark infringement, can be relevant to a personal jurisdiction inquiry. *See, e.g., Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, at 1563 (Fed. Cir. 1994). However, "a plaintiff may not manufacture jurisdiction by engaging in a sale merely to confer jurisdiction in a particular forum." *Dawson v. Pepin*, 1:99-CV-316, 2001 WL 822346, at *5 (W.D. Mich. Mar. 29, 2001) (Quist, J.) (citing *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 332–33 (D.S.C. 1999); *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 112 (D. Conn. 1998)). Here, the relevant

evidence from the Court's perspective is not whether this particular sale was actually consummated, but rather the undisputed characteristics of Defendant's website.

Considering all the evidence together, Plaintiff has established a prima facie case of purposeful availment. The Court holds, therefore, that to allow a defendant to escape personal jurisdiction in a particular forum simply because its interactive website redirects customers to a third-party vendor's site to complete a sale would undermine the "traditional notions of fair play and substantial justice" that protect both plaintiffs and defendants. As much as the Due Process clause operates to protect defendants from forum shopping on the part of plaintiffs, it serves to protect plaintiffs from gamesmanship on the part of defendants. Here, Defendant's website solicits customers from around the country, including Michigan, to buy its products and have those products shipped into the customer's state. For the reasons stated above, the Court holds that Defendant operates an interactive website at the extreme end of the *Zippo* sliding-scale, such that Defendant "clearly does business over the Internet." *Zippo*, 952 F. Supp. at 1124, and such that Defendant has purposefully availed itself of the privilege of acting in Michigan.

    (b)    *Calder* Effects Test

Plaintiff argues that in addition to Defendant's interactive website, Defendant has also purposefully availed itself of the privilege of acting in Michigan under the *Calder* effects test. This Court agrees. The *Calder* effects test allows a plaintiff to "enhance" the contacts a defendant has with a forum by demonstrating that the defendant intentionally directed its tortious conduct toward plaintiffs in the forum. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012); *Air Prods. & Controls, Inc.*, 503 F.3d at 552–53; *Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (holding that personal jurisdiction was proper in California over two Florida defendants who published an

allegedly defamatory article about a California resident). Contacts with the forum, in the context of purposeful availment, are "enhanced" when (1) the defendants acted intentionally, (2) the defendants' action was expressly aimed at the State of Michigan, and (3) the brunt of the injuries were felt in Michigan. *Thomas v. Barrett*, No. 1:12-CV-74, 2012 WL 2952188, at *2 (W.D. Mich. July 19, 2012) (Bell, J.) (citing *Audi AG & Volkswagon of Am., Inc. v. D'Amato,* 341 F.Supp.2d 734, 746 (E.D. Mich 2004)).

Here, Plaintiff's claims are for trademark infringement and unfair competition. (*See generally* Compl., Dkt. No. 1.) As the Sixth Circuit has long recognized, "violations of federal trademark law are analogous to tort cases." *Bird*, 289 F.3d at 876 (citing *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, Ltd. P'ship,* 34 F.3d 410, 411–12 (7th Cir.1994); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1388 (8th Cir.1991)). Further, "because a plaintiff whose trademark has been violated potentially suffers economic harm as a result of the defendan"'s actions, the injury occurs both in places where the plaintiff does business and in the state where its primary office is located." *Bird*, 289 F.3d at 876 (citing *Panavision*, 141 F.3d at 1322; *Zippo*, 952 F. Supp. at 1127).

(i)    *Intentional Acts*

Here, Plaintiff has presented evidence that Defendant acted intentionally. Defendant does not dispute that it chose its brand name for its distillery (Dark Horse) and discovered that Plaintiff used a similar mark for its brewery at about the same time: mid-2010. (*See* Pl.'s Resp., Dkt. No. 13 at 9.) Further, Defendant did not begin to use the mark in commerce until 2012, after learning that Plaintiff objected to Defendant's use of the mark and would oppose its registration in the United States Patent and Trademark Office. (*Id.* at 10.)

11

Defendant counters that it chose its trade name prior to learning of Plaintiff's existence. (Def.'s Reply, Dkt. No. 14 at 12.) Defendant also discusses a string of cases from the Eastern District of Michigan, citing them for the proposition that mere use of conflicting or similar marks by a defendant is not necessarily intentional conduct for the purposes of the effects test. (Def.'s Br., Dkt. No. 10 at 15–18.) Defendant has presented no controlling authority on the issue. Without a full discussion of each case Defendant cites, the Court notes that many of these cases relate specifically to domain names that infringed a trademark, and not a product sold to customers in the forum state. Further, in many of these cases, the ultimate jurisdictional question was reached on other grounds. Nonetheless, the Court is convinced that using a trade name that one knows to be protected by federal trademark law, and that one knows to be in use by another entity in a similar industry, can be nothing other than intentional.

    (ii)    *Expressly aimed at Michigan*

As discussed above, Defendant was on notice that Plaintiff is located in Michigan and that if it used a mark that infringes Plaintiff's registered trademark, that the effect of the conduct would be felt in Michigan. Therefore, the Court concludes that Defendant expressly aimed its infringing conduct at Michigan.

    (iii)    *Brunt of Injuries felt in Michigan*

A plaintiff whose trademark rights have been violated feels the injury in the state in which its offices are located. *Bird*, 289 F.3d at 876. Because Plaintiff is located in Michigan, the effects of Defendant's allegedly tortious conduct is felt in Michigan. Because Plaintiff has met all three prongs of the *Calder* effects test, the Court concludes that Defendant purposely availed itself of the privilege of acting in Michigan.

For the foregoing reasons, the Court concludes that Plaintiff has established a prima facie case of purposeful availment under the Due Process clause under both the *Zippo* sliding-scale of website interactivity and the *Calder* effects test.

2.   Activity in Forum

The second *Southern Machine* factor is whether the cause of action arises from the defendant's activities in the forum state. *Southern Mach. Co.*, 401 F.2d at 381. As discussed above, trademark infringement is essentially a tort, the effect of which is felt in the state where Plaintiff is located. Therefore, to the extent that Defendant has allegedly violated Plaintiff's federal trademarks, the cause of action arises in Michigan, where Plaintiff is located.

3.   Reasonable exercise

The final *Southern Machine* factor is whether, based on the quality and quantity of contacts, exercise of personal jurisdiction over the defendant is reasonable. *Southern Mach. Co.*, 401 F.2d at 381. "An inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875 (citing *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)). Here, Defendant has done nothing to rebut the presumption, other than to assert that "[d]efending the present suit in Michigan . . . would be burdensome [for Defendant], a small family business." (Def.'s Reply, Dkt. No. 14 at 13). The proper inquiry, however, is not whether defending the suit would present a burden, but whether exercise of personal jurisdiction by this Court would be reasonable. Defendant has not overcome the presumption of reasonableness. Therefore, because Plaintiff has established a prima facie case under the three-factor *Southern Machine* test, the Court holds that exercise of personal jurisdiction over Defendant comports with Due Process.

**B.      Michigan's Long-Arm Statute**

Michigan's long-arm statute provides limited personal jurisdiction over a corporate defendant when any of the following relationships exist between the corporation and Michigan:

(1)     The transaction of any business within the state.

(2)     The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

\*   \*   \*

Mich. Comp. Laws § 600.715. Transacting "any business" within Michigan "is established by 'the slightest act of business in Michigan.'" *Neogen*, 282 F.3d at 888 (quoting *Lanier v. Am Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988) (citing *Sifers v. Horen*, 188 N.W.2d 623, 624 n.2 (Mich. 1971))). Additionally, the Michigan Supreme Court has held that under the plain language of § 600.715(2) "either the tortious conduct or the injury must occur in Michigan." *Green* 565 N.W.2d at 817.

Because even the "slightest act of business" in Michigan is the transaction of business for the purposes of § 600.715(1), Plaintiff is not required to show that Defendant consummated any sales in Michigan, nor that it has Michigan customers. *See Audi AG,* 341 F.Supp.2d at 744. As discussed above, Defendant operates an interactive website directed at potential customers in Michigan. Further, Plaintiff alleges Defendant committed what is essentially a tort, the consequences of which occurred in Michigan. Thus, personal jurisdiction can also be exercised under § 600.715(2). Therefore, exercise of personal jurisdiction is authorized by Michigan's long-arm statute.

**III**.

For the foregoing reasons, the Court concludes that exercise of personal jurisdiction over

Defendant comports with both the Due Process clause and with Michigan's long-arm statute. Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) will therefore be denied.

      The Court will issue an Order consistent with this Opinion.


Dated: <u>April 15, 2014</u>                                                         /s/ Robert Holmes Bell
                                                                                     ROBERT HOLMES BELL
                                                                                      UNITED STATES DISTRICT JUDGE