UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOR-DALL ENTERPRISES, INC.,

       Plaintiff,

v.

       File No. 1:13-cv-915

       HON. ROBERT HOLMES BELL

DARK HORSE DISTILLERY, LLC, and
KRISTINA HENNESSY,

       Defendants.
_____/

**O P I N I O N**

This is an action for trademark infringement and unfair competition brought by Plaintiff Mor-Dall Enterprises, d/b/a Dark Horse Brewing, alleging one count of trademark infringement and two counts of opposition to trademark registration under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, one count of common law unfair competition and trademark infringement, and one count under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903, against defendants Dark Horse Distillery and Kristina Hennessy. Defendant Kristina Hennessy moves to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (ECF No. 54.) Plaintiff has filed a response (ECF No. 58), to which Defendant Hennessy has filed a reply (ECF No. 64.)

I.

Defendant Kristina Hennessy is a full-time animal immunologist in Kansas, as well as the sole member of co-Defendant Dark Horse Distillery. (Def.'s Br. at 1, ECF No. 55.) Hennessy approached the four Garcia siblings, this children of her longtime friend, in early 2010 with the idea to open a craft distillery. (*Id*. at 1–2.) In July 2010, Hennessy and the Garcias decided to name the distillery Dark Horse, a name originating from Hennessy's work with horses and the Garcias' and Hennessy's humble background. (*Id.* at 2.)

At approximately the same time in July 2010, Hennessy conferred with legal counsel in regards to a trademark for Dark Horse. (Hennessy Dep. at 13.) Hennessy knew from about that time that Plaintiff Dark Horse Brewing Company was a brewing company, but she did not see this as problematic because she understood that beer is different from liquor and spirits. (*Id.*) In March 2012, Hennessy reviewed a marketing report prepared for Dark Horse Distillery that suggested some overlap in consumers among the liquor and brewery industries. (Pl.'s Br. at 4, ECF No. 58) In March 2013, Dark Horse Brewing Company filed a Notice of Opposition in the Trademark Trial and Appeal Board ("TTAB"). (*Id.* at 3; Hennessy Dep. at 16, 20.)

Since Dark Horse Distillery's inception, Hennessy has had authority for expenditures and significant decisions. (Hennessy Dep. at 22, 29, 56, 61, 40.) She does not manage day-to-day operations. (Def.'s Br. at 2.) She visits the distillery weekly to sign forms and speak with employees. (*Id.*) The Garcia siblings run the day-to-day operations, including advertisements

and distribution. (*Id.*) Hennessy has never negotiated or entered into contracts in Michigan, nor traveled to Michigan to advertise Dark Horse, nor physically conducted any other business activities in Michigan related to Dark Horse. (*Id.* at 3.)

**II.**

Plaintiff alleges two grounds for exercising personal jurisdiction over Hennessy. First, Plaintiff alleges that Hennessy operates Dark Horse Distillery's interactive website that solicits Michigan residents to order and purchase its products. Second, Plaintiff alleges that Hennessy has purposefully directed an injury toward Michigan by infringing Plaintiff's trademarks. (Pl.'s Br. at 7.) Defendant Hennessy argues that she has not purposefully availed herself of the privilege of acting in or causing injury in Michigan, nor is it reasonable to exercise jurisdiction over her based on convenience and efficiency. (Def.'s Br. at 6, 11.)

Where, as here, the Court decides a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of making a prima facie showing that the court has personal jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *see also Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (describing the burden on the plaintiff in such a case as "relatively slight"). To meet this burden, the plaintiff must establish "with reasonable particularity" sufficient contacts between the defendant and the forum state to support jurisdiction. *Neogen*, 282 F.3d at 887; *see also See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518, 520–21 (6th Cir. 2006) ("[I]n the face of a properly

supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."). In evaluating the plaintiff's response to the motion to dismiss, the Court construes the facts in the light most favorable to the plaintiff and disregards contradictory evidence proffered by the defendant. *Neogen*, 282 F.3d at 887.

A defendant may be subject to general jurisdiction and/or limited jurisdiction. "Limited jurisdiction extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect," whereas "[g]eneral jurisdiction . . . enables a court in Michigan to exercise jurisdiction over a [defendant] regardless of whether the claim at issue is related to its activities in the state or has an in-state effect." *Neogen Corp.*, 282 F.3d at 888 (citing *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989)). In Michigan, the exercise of limited jurisdiction requires a two-step process: "(1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). The reach of Michigan's long-arm statute has been construed as co-extensive with the limits of constitutional due process. *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992); *Green v. Wilson,* 565 N.W.2d 813, 816–17 (1997).

Due process concerns are governed by the standard articulated in *International Shoe* and expounded by its progeny: ensuring a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In addition to the "minimum contacts" analysis required by *International Shoe*, the question of due process in the context of establishing specific personal jurisdiction turns on whether "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). The Sixth Circuit has formulated a three-prong test to evaluate whether exercising specific personal jurisdiction satisfies due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Jurisdiction over a corporate officer is appropriate where she was "actively and personally involved in the conduct giving rise to the claim." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000). Jurisdiction over the officer is not predicated upon jurisdiction over the corporation, but rather on whether the officer herself "purposefully availed herself of the forum and the reasonably foreseeable consequences of

5

that availment." *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Int'l Shoe,* 326 U.S. at 316 (1945)).

**A. Purposeful Availment**

Plaintiff presents two theories of purposeful availment. First, Plaintiff argues that Defendant authorizes the interactive components of the Distillery's website, directed at Michigan residents. (Pl.'s Br. at 9.) Second, Plaintiff argues that the injury felt by Defendant's trademark infringement is felt in Michigan. (*Id.* at 11.)

This Court has already ruled that Defendant Dark Horse Distillery purposefully availed itself of the privilege of acting in Michigan through its operation of its website in conjunction with its distributor's website. (ECF No. 15.) Jurisdiction over the Distillery on the basis of the website cannot be extended to Hennessy unless she was actively or personally involved in the website. *See Balance Dynamics*, 204 F.3d at 698. According to Hennessy, two of the Garcia siblings wanted to place a link on the Distillery's website to their distributor Drink Up New York. (Hennessy Dep. at 40.) The siblings consulted with Hennessy, who approved the decision. (*Id*.) Her understanding was that if someone navigated to Dark Horse Distillery's website to purchase products, they would be redirected to the distributor Drink Up New York's website to see if the product was available for sale in their area. (*Id.*) Hennessy has never personally spoken to the distributor. (*Id*. at 41.) Prior to her deposition, she did not know that a Michigan resident ever purchased the Distillery's products over its website. (*id.*)

The availability of distribution of Dark Horse Distillery products in Michigan and the surrounding region is precisely the heart of this claim. Hennessy approved the initial relationship with the Drink Up New York distributor, and she has described her intent for the Distillery to distribute nationally. (*Id*.) She cannot now claim that she did not foresee the consequences of interactively selling and distributing her products in a broad region. Considering all the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has established a prima facie case that Hennessy was actively and personally involved in the website and distribution of her company's product, and thus purposefully availed herself of the privilege of this forum.

Plaintiff argues that in addition to Defendant's website, Defendant Hennessy has also purposefully availed herself of the privilege of acting in Michigan under the *Calder* effects test. This Court agrees. The *Calder* effects test allows a plaintiff to "enhance" the contacts a defendant has with a forum by demonstrating that the defendant intentionally directed its tortious conduct toward plaintiffs in the forum. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012); *Air Prods. & Controls, Inc.*, 503 F.3d at 552–53; *Calder v. Jones*, 465 U.S. 783, 788–89 (1984). Contacts with the forum, in the context of purposeful availment, are "enhanced" when (1) the defendants acted intentionally, (2) the defendants' action was expressly aimed at the State of Michigan, and (3) the brunt of the injuries were felt in Michigan. *Thomas v. Barrett*, No. 1:12-CV-74, 2012 WL 2952188, at

*2 (W.D. Mich. July 19, 2012) (Bell, J.) (citing *Audi AG & Volkswagon of Am., Inc. v. D'Amato,* 341 F. Supp. 2d 734, 746 (E.D. Mich 2004)).

Here, Plaintiff's claims are for trademark infringement and unfair competition. (Amd. Compl. at 8–13, ECF No. 46.) As the Sixth Circuit has long recognized, "violations of federal trademark law are analogous to tort cases." *Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002) (citing *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998); *Indianapolis Colts, Inc. v. Metro. Balt. Football Club, Ltd. P'ship,* 34 F.3d 410, 411–12 (7th Cir.1994); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1388 (8th Cir.1991)). Further, "because a plaintiff whose trademark has been violated potentially suffers economic harm as a result of the defendant's actions, the injury occurs both in places where the plaintiff does business and in the state where its primary office is located." *Bird*, 289 F.3d at 876 (citing *Panavision*, 141 F.3d at 1322; *Zippo*, 952 F. Supp. at 1127).

(i) *Intentional Acts*

Plaintiff has presented evidence that Hennessy acted intentionally. Hennessy does not dispute that she and the Garcias chose the brand name for her Distillery, and she conferred with legal counsel on its use. She personally knew in 2010, unlike the Garcias, that Plaintiff used a similar mark for its brewery. Moreover, she commissioned and reviewed the 2012 marketing report. By 2013, she also learned of Plaintiff's objection to the Distillery's use of the mark and its opposition to the mark's registration in the United

8

States Patent and Trademark Office. Despite this opposition, Hennessy personally coordinated a six-figure advertising campaign at Kauffman Stadium in Kansas City.

Hennessy suggests that she did not choose the Dark Horse brand alone, and that it was not her idea to market her company on The Knot or Drink Up New York. However, Plaintiff need not show that Hennessy was solely responsible for the Distillery's allegedly infringing acts; Plaintiff need only make a prima facie showing that Hennessy was actively and personally involved in the acts. The facts of *Lown Companies, LLC v. Piggy Paint, LLC*, No. 1:11-cv-911, 2012 WL 3277188 (W.D. Mich. Aug. 9, 2012) (Bell, J.) are distinguishable because the plaintiffs in that case alleged that the individual defendants exercised direction, control, and overall participation, but failed to offer any particularized showing of how their conduct related to the infringement. This Court ruled that the plaintiff did not satisfy the active and personal involvement requirement. *Id*. at *3. By contrast, here Plaintiffs have alleged specific tortious conduct that goes to the heart of this infringement case: Hennessy personally chose the Dark Horse brand and established it through extensive advertising that she authorized and coordinated personally. The Court is convinced that using a trade name that one knows to be protected by federal trademark law, that one knows to be in use by another entity in a similar industry, that one has market research to demonstrate a potential conflict, and that one nonetheless pursues can be nothing other than intentional. Plaintiff has made a prima facie showing of Hennessy's intentionality for the purposes of this jurisdictional analysis.

9

(ii) *Expressly aimed at Michigan*

As discussed above, Hennessy was on notice by 2010 that Plaintiff is located in Michigan, and that if she used a mark that infringes Plaintiff's registered trademark, then the effect of her conduct would be felt in Michigan. Moreover, Hennessy has expressly indicated her intent to distribute her Distillery's products in at least the forty-eight contiguous states, including Michigan. (Hennessy Dep. at 42-43.) She has taken affirmative acts to establish and expand distribution of her company's products into regions in which Plaintiff's products are allegedly available. (*Id.*) Defendant responds that Plaintiff has not demonstrated any evidence that she was aiming her conduct at Plaintiff by trading off the goodwill of his brewery, rather than other entities using "dark" and "horse". (Def.'s Br. at 9.) Defendant is putting the cart before her horse. Whether Plaintiff has made a sufficient evidentiary showing about trading off good will is a substantive issue of liability. At this point, Plaintiff need only make a prima facie showing of facts that Defendant Hennessy expressly aimed her conduct toward Michigan. The Court concludes that this prong is satisfied on the basis of Hennessy's involvement in the Distillery's product distribution and her intent to increase distribution into Michigan.

(iii) *Brunt of Injuries felt in Michigan*

A plaintiff whose trademark rights have been violated feels the injury in the state in which its offices are located. *Bird*, 289 F.3d at 876. Because Plaintiff is located in Michigan, the effects of Defendant's allegedly tortious conduct is felt in Michigan.

Because Plaintiff has met all three prongs of the *Calder* effects test, the Court concludes that Defendant purposely availed herself of the privilege of acting in Michigan.

**B. Activity in Forum**

The second *Southern Machine* factor is whether the cause of action arises from the defendant's activities in the forum state. *Southern Mach. Co.*, 401 F.2d at 381. "Physical presence is not the touchstone of personal jurisdiction," and personal jurisdiction may exist even though Hennessy has not traveled to Michigan for business related to Dark Horse Distillery. *See Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001). As discussed above, trademark infringement is essentially a tort, the effect of which is felt in the state where Plaintiff is located. Therefore, to the extent that Defendant has allegedly violated Plaintiff's federal trademarks, the cause of action arises in Michigan, where Plaintiff is located.

**C. Reasonable Exercise**

The final *Southern Machine* factor is whether, based on the quality and quantity of contacts, exercise of personal jurisdiction over the defendant is reasonable. *Southern Mach. Co.*, 401 F.2d at 381. "An inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875 (citing *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)). A defendant seeking to establish a lack of fairness bears a heavy burden. *Steelcase, Inc. v. Mar-Mol, Inc.*, 210 F. Supp. 2d 920, 935 (W.D. Mich. 2002) (Quist, J.) (citing *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*,

988 F.2d 476, 483 (3d Cir.1993)). The defendant must present a "compelling case" that other considerations would render personal jurisdiction unreasonable. *Id.* (quoting *Burger King,* 471 U.S. at 477). Here, Defendant Hennessy argues that the present suit is burdensome for her because she has a busy, full-time job and her participation in the suit does not affect the availability of relief against Defendant Dark Horse Distillery. (Def.'s Br. at 10–11.) The Court does not find that her case is sufficiently compelling to overcome the presumption of reasonableness. Therefore, because Plaintiff has established a prima facie case under the three-factor *Southern Machine* test, the Court holds that exercise of personal jurisdiction over Defendant comports with Due Process.

**IV.**

For the foregoing reasons, the Court concludes that exercise of personal jurisdiction over Defendant comports with both the Due Process clause and with Michigan's long-arm statute. Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) will therefore be denied.

The Court will issue an Order consistent with this Opinion.

Dated: February 3, 2015            /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE